Filed 2/26/14  P. v. Rosel CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MAURILLO IVAN ROSEL, JR.,<br><br>    Defendant and Appellant. | G048976<br><br>(Super. Ct. No. 07NF2702)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Jonathan S. Fish, Judge.  Affirmed.

Maurillo Ivan Rosel, Jr., in pro. per.; and Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*            \*            \*

We are not surprised to have Maurilio Ivan Rosel, Jr.,back again. The first time he appealed his conviction for committing the 2007 crimes, we reversed the true finding on the gang enhancement for lack of substantial evidence, and the second time he appealed, we reversed his conviction for street terrorism. He started out with a sentence of 22 years in state prison, and now has his sentence down to 12 years. All in all, he hasn't done badly in this court. Alas, the third time is not always a charm.

We appointed counsel to represent defendant on appeal. Counsel filed a brief which set forth the facts of the case. Counsel did not argue against the client, but advised the court no issues were found to argue on defendant's behalf. Defendant was given 30 days to file written argument in defendant's own behalf. Defendant did file a brief and we have reviewed it.

Pursuant to *Anders v. California* (1967) 386 U.S. 738, counsel stated that "in order to assist the court in conducting its independent review of the record, appellant noted the following grounds for appeal in his notice of appeal [citation] (1) the trial court erred in denying the original motion to suppress evidence pursuant to Penal Code section 1538.5; (2) there was insufficient evidence to support his conviction for robbery; (3) there was insufficient evidence to support the firearm enhancements, insofar as the police 'put a weapon taken of someone else[']s case to [appellant's] case'; and (4) incriminating evidence (clothing matching the suspect's description) was placed on appellant's 'corporeal body for the express purpose of obtaining a positive identification by the victim/witness at an in-field show-up.'"

In one of our earlier opinions in this matter (*People v. Rosel* (Jan. 26, 2012, G044481) [nonpub. opn.]) we included the following facts:
"*The Crime*

"On July 25, 2007 at around 8:15 a.m., Jesus Garcia was walking to work along Mitchell Avenue in Tustin when a car stopped next to him and 'the person got out of the car with a hand gun, pistol in his hand, and he threatened' Garcia. Garcia testified:

2

'He asked me to give him everything.' Garcia gave him all the money he had, 'close to a hundred dollars.' The person also demanded Garcia's cell phone and he handed that over too. Garcia said he was able to see 'there was a driver and the person who robbed me.' The robber appeared to be 18 or 19 years old, wore a white shirt, dark pants, a dark cap and white tennis shoes.

"After the vehicle drove off, Garcia turned around and observed the car, which he described to the police. Later the same day, Garcia spotted the car again. During trial, Garcia identified defendant as the person who robbed him.

"*Investigation*

"By using satellite technology, the police located Garcia's cell phone at a residence on West 11th Street in Santa Ana. A team of five undercover officers went to conduct surveillance at that location. A vehicle matching the description given by Garcia, and registered to Adelina Rosel, was spotted in the driveway.

"Adelina Rosel granted police permission to look inside the house. Defendant was inside wearing only boxer shorts, standing within six feet of a pile of clothes, consisting of jeans, a white T-shirt and a pair of white tennis shoes. While inside, police dialed Garcia's cell phone number and heard the phone ring. Garcia was brought to the scene for a field identification."

We add additional facts which were not in an earlier opinion on the issue of whether or not there was a suggestive lineup. In that regard, defendant's handwritten brief argues the police officer ordered him to put on clothes which matched the description given by the victim. He also argues there was more than one male Hispanic in the home when he was arrested.

The officer was asked to describe the clothes found six feet from defendant, and the officer stated: "It appeared as if someone were standing in one spot and just disrobed and dropped everything where they lay. I would describe it as a fireman putting on a layer of clothes, whatever is going to go on first is on top. So there was a pile of

jeans laying there and then a white T-shirt next to it or partially on top and then a pair of [] white tennis shoes underneath the jeans." The police officer later stated: "I remember we had him get dressed in the clothes because that's what I believe were the clothes that he was wearing when he committed the crime."

The officer was asked: "At any time did you have any other male individuals in custody at that location . . . 11th Street?" The officer responded: "No."

The second place evidence on the issue of more than one male Hispanic being in or near the home is as follows, which is taken from the victim's testimony wherein the following questions and answers were asked by the prosecutor and answered by the victim:

"Q. And the police had you view an individual standing next to a blue Toyota; is that right?

"A. Well, actually the police took out two people, two individuals.

"Q. Okay. Well, go ahead and tell us what happened when you were brought to this place?

"A. Well, it was just for the purpose of identification and I was only able to identify the person who attacked me.

"Q. But there were two people there that you were shown?

"A. Yes.

"Q. All right. And you identified one of them as the individual that robbed you at gunpoint?

"A. Yes.

"Q. And do you see the person that you identified that day here in the courtroom today?

"A. Yes."

At that point in the trial, the court ordered that the record would reflect the victim identified defendant as the robber.

4

During the defense attorney's cross-examination of the victim, the following question and answer occurred:

"Q. And where was the patrol car parked?

"A. Well, it was parked right on the street along the sidewalk from a place where I could see when they took the men out of the car."

*Motion to Exclude Evidence*

Defendant sought exclusion of: "1. Observations (aural and visual) of the officers inside the house. [¶] 2. Seizure of the defendant. [¶] 3. Sprint cell phone alleged to be the property of [the victim]. [¶] 4. Charge and check cards. [¶] 5. Clothing, including but not limited to: white baggy T shirt, black baggy denim pants, white shoes. [¶] 6. Statements of the defendant. [¶] 7. Field identification of the defendant by [the victim]."

After the testimony of several witnesses was received in the hearing conducted pursuant to defendant's motion to exclude evidence under Penal Code section 1538.5, the court expressed a concern about the prosecution's evidence, stating: "[T]he People have the obligation of demonstrating that there was initial probable cause for the officers to act upon the information. It is clear from the detective's testimony that he had information that a robbery had occurred, that the suspect was dressed in certain clothing." The court noted a historical concern was to "preclude officers from making an arrest and then saying I had information that somebody dressed in clothing; that this particular person that I arrested was, I had information they were wanted for a crime and that's why I pulled them over."

The prosecution was granted a continuance of the motion. At the continued hearing, the prosecution called another police officer who testified he interviewed the victim who described, "a male Hispanic in his 20's wearing a black cap, white T-shirt and blue, dark blue pants, white tennis shoes as well." The victim also told the

5

investigating officer his cell phone was taken, and police contacted the telephone provider to locate an address based on the coordinates of the stolen phone.

With regard to the victim's identification, the officer was asked: "So did you show him some photographs that you compiled to see if he could pick out anybody he thought was involved in this robbery?" The officer said the victim was shown photographs, but did not pick out anybody.

When the court made its ruling, it carefully discussed all the evidence presented, including the victim's description, how the police found the house where defendant was arrested, the consent to enter the house given by defendant's mother and how defendant was found. The court then concluded the motion to suppress was denied.

""""The standard of appellate review of a trial court's ruling on a motion to suppress is well established. We defer to the trial court's factual findings, express or implied, where supported by substantial evidence. In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]" [Citations.]' [Citation.]" (*People v. Little* (2012) 206 Cal.App.4th 1364, 1372.) We have reviewed the record and note the clothes were nearby defendant. There is no indication the clothes belonged to anyone else and there is no evidence defendant denied the clothes were his. We conclude the trial court did not err in denying the motion to suppress.

*The Field Show-Up*

At trial, one of the investigating officers testified the victim was brought to the residence to conduct a field identification. Defendant was dressed in the clothes that were found in a pile a few feet away from him. The victim did identify defendant as well as the blue Toyota used in the robbery.

Testimony of the victim's identification of the defendant and the car was clearly relevant. (Evidence Code, § 210.) There is evidence that a second man was in a

6

patrol car when the victim was brought to the residence, but there is no evidence the other male was Hispanic or was ever inside the residence. Taking into account the totality of the circumstances, we cannot conclude the identification process used by the police amounted to a violation of defendant's due process rights. (*Perry v. New Hampshire* (2012) __ U.S. __, __- __ [132 S.Ct. 716, 722-723]; *People v. Thomas* (2012) 54 Cal.4th 908, 930-931.) Nor do we find anything about the lineup violated his privilege against self-incrimination. (*United States v. Wade* (1967) 388 U.S. 218, 221.)

*Sufficiency of Evidence*

A criminal defendant may not raise issues in piecemeal appeals, when an issue could have been raised in the first appeal. (*People v. Senior* (1995) 33 Cal.App.4th 531, 536-537.) Here, defendant has forfeited his right to raise the issue of a lack of substantial evidence by not raising it in his first appeal.

We have examined the record and found no other arguable issues. (*People v. Wende* (1979) 25 Cal.3d 436.) The judgment is affirmed.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.

7